**HARRY PRIEST, IV**                      2005 JAN 14  A 11: 41
                    **PLAINTIFF**

                                          SIG: _____
**VERSUS**                                **CIVIL ACTION NO. 03-701-B-M1**
                                          BY DEPUTY CLERK

**SEARIVER MARITIME, INC.**                      **JUDGE:**
                    **DEFENDANT**

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Harry Priest,

IV, and submits his Memorandum in Support of Motion for Partial Summary Judgment:

## I.    INTRODUCTION

Plaintiff, Harry Priest IV, sustained personal injury on October 30, 2003, when he

slipped and fell while installing splashboards aboard the M/V KENTUCKY, a vessel owned

and operated by SeaRiver Maritime, Inc. ("SeaRiver").  Plaintiff subsequently filed the

instant suit seeking damages and maintenance and cure.  On March 22, 2004, Plaintiff

filed his original Motion for Partial Summary Judgment on the issue of maintenance and

cure.  On April 25, 2004, the parties reached an agreement whereby SeaRiver would pay

maintenance at a rate of $20.00 per day and cure subject to right to seek reimbursement

and Mr. Priest would reserve his right to challenge the rate of maintenance and the

arbitrary and capriciousness of SeaRiver's denial of these benefits.

-1-



In September of 2004, SeaRiver again terminated Mr. Priest's maintenance and cure benefits. On or about August 12, 2004, Mr. Priest was examined by Dr. Arnold Feldman who recommended that Mr. Priest undergo an endoscopic discectomy. On November 30, 2004, Mr. Feldman testified to the same, and subsequently a demand was made on SeaRiver to reinstate maintenance and cure benefits. SeaRiver has subsequently denied Plaintiff's entitlement to these benefits. Mr. Priest now files the instant Motion for Partial Summary Judgment seeking to reinstate his maintenance at a rate of $50.00 per day and provide cure related to his injuries.

## II.    FACTS

### A.    Injury in the Course and Scope of Employment

On or about October 30, 2002, while the M/V SR KENTUCKY was navigating the Mississippi River upstream from Paducah, Kentucky, Mr. Priest, was ordered to install splashboards. Mr. Priest struggled to lift the splashboards, each of which was approximately twelve feet long and two inches by ten inches thick, as he attempted to balance himself on the capstan. As he reached for one of the splashboards, he lost his balance, slipped, and fell, striking the deck of the vessel, causing injuries to his back and spine.

### B.    Medical Treatment and Evaluation

After receiving initial treatment aboard the vessel, Mr. Priest was evaluated by Dr. David McGraw in Woodville, Mississippi. Dr. McGraw referred Mr. Priest to Dr. Martin Langston in Baton Rouge, Louisiana. On November 20, 2002, Dr. Langston diagnosed Mr. Priest with degenerative lumbar disc disease and disc bulging. Dr. Langston prescribed

-2-

a course of therapy and medication and further recommended that Mr. Priest be kept off work until he could be re-evaluated. Mr. Priest continued to see Dr. Langston for the next several months until March of, 2003, when his maintenance and cure benefits were terminated.

After his maintenance and cure benefits were terminated, Mr. Priest returned to Dr. David McGraw. Dr. McGraw subsequently referred Mr. Priest to Dr. Arnold Feldman. The testimony of Dr. Feldman clearly shows that Mr. Priest has not reached maximum medical improvement. Accordingly to Dr. Feldman, Mr. Priest was diagnosed with a herniated disc. Ex. B at 13. Dr. Feldman has recommended an endoscopic discectomy. Ex. B at 20. Dr. Feldman explained that this involves removing the herniated disc "through a 4 millimeter or 5 millimeter incision and you use a probe and a laser and you basically vaporize the disc." He stated that this surgery is especially good for young candidates because, "[y]ou take out the herniated disc without disrupting a lot of the normal tissue." Ex. B. at 21. Dr. Feldman concluded, I feel that this patient was a good candidate for [endoscopic surgery], and still think that might be a good option for him." Ex. B. at 21.

## III.    **ARGUMENT**

### A.    **Duty of Maintenance and Cure**

Maintenance and cure is an action ex contractu, pursued independently of other theories of liability under the Jones Act and General Maritime Law. Fox v. Texaco, Inc., 722 So.2d 1064, 1067 (La. App. 1st Cir. 1998). The underlying policy of maintenance and cure is to "assure the well-being of seamen" Id. This purpose should not be defeated "by restrictive and artificial distinctions...If leeway is to be given in either direction, all the

considerations dictate it should be in the sailor's behalf." Id. at 175.

In order to recover Mr. Priest must merely show that his occurred while his was in the service of the vessel or that that the injury arose during his service of the vessel; no causal connection to [the seaman's] duties must be shown.". Miller v. Lykes Bros.-Ripley S.S. Co., 98 F.2d 185 (5th Cir. 1938); Comeaux v. Basin Marine, Inc., 640 So.2d 833, 836 (La. App. 1st Cir. 1994). While the determination of seaman's status is usually a question for the fact-finder, courts have acknowledged that summary judgment is an appropriate vehicle for the disposition of the plaintiffs status when the facts are clear. See Barrett v. Chevron U.S.A., Inc., 781 F.2d 1067, 1074 (5th Cir. 1986); Ketnor v. Automatic Power, Inc., 850 F.2d 236, 238 (5th Cir. 1988).

## B.    Mr. Priest was in the service of the M/V KENTUCKY at the time of the accident.

A recovery of maintenance and cure is "predicated on the employment relationship itself." See Liner v. J.B. Talley and Co., 618 F.2d 327, 332 (5th Cir. 1980). The seaman is not required to establish a causal relationship between his employment and his injury. This means that even if the injury occurs while on shore leave, if he generally answerable to the call of duty, he is entitled to maintenance and cure. Farrell v. United States, 336 U.S. 511 (1949).

SeaRiver Maritime conceded that Mr. Priest was in the service of the vessel by instituting maintenance and cure. There is also a causal connection between the employment and injury Mr. Priest suffered. At the time of the accident, Mr. Preist was working as a deckhand aboard the M/V KENTUCKY. Mr. Priest has testified that this job

-4-

was on-going and he worked thirty (30) days on and (15) days off, and was also took on overtime regularly. His tasks including assisting in all aspects of navigation of a vessel which traveled on the Mississippi River, including regular shifts on watch. At the time of the accident, he was installing splashboards, which the pilot ordered as necessary for continuing navigation. As such, it is indisputable that Mr. Priest was in the service of the vessel.

## C.    Mr. Priest has not achieved Maximum Medical Improvement

The duty to provide maintenance and cure arises for seaman becoming ill or injured during the period of their service. Aguilar v. Standard Oil Co., 318 U.S. 724, 730 (U.S. 1943). Cure includes the medical, therapeutic and hospital expenses necessary to reach maximum recovery. "The cut-off date for both maintenance and cure is not the point at which the seaman recovers sufficiently to return to work. Rather, it is the date of maximum medical cure." Id. at 95.    As stated above, Dr. Feldman has recommended an endoscopic procedure for Mr. Priest. This procedure is calculated to allow him to further improve his medical condition and is not pallative in nature. As explained above, this treatment is curative in nature and clearly falls within SeaRiver's obligation of maintenance and cure.

## D.    Rate of Maintenance of Cure

Maintenance includes the comparable value of the food and lodging provided by the vessel. Springborn v. American Commercial Barge Lines, Inc., 767 F.2d 89, 94 (5ᵗʰ Cir. 985). Mr. Priest resides in Gloster, Mississippi with his wife and daughter. Mr. Priest is responsible for his entire mortgage and, as set forth in his affidavit, Mr. Priest must expend $50.00 per day to cover his food and lodging costs.

-5-

## IV.  CONCLUSION

This case gives that impression that SeaRiver not only wanted to dispose of its river fleet, including the M/V Kentucky, but also all liabilities it had incurred from its operations. Not only was Mr. Priest terminated, but now, in spite of testimony that he will improve from additional medical care, he is being denied valuable medical benefits that will enable him to return to the workforce. Accordingly, maintenance and cure should be reinstated for Mr. Priest.

Respectfully submitted,

SPYRIDON, KOCH, PALERMO & DORNAN

BY: _Melange Ruleoc_

GREGG L. SPYRIDON (#12355)
MICHAEL RUTLEDGE (#28748)
3838 N. Causeway Blvd., Suite 3010
Metairie, LA 70002-8335
Telephone:(504) 830-7800
Fax:(504) 830-7810
Counsel for Plaintiff, Harry Priest, IV

-6-

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served by United States mail, postage pre-paid, a true and correct copy of the above and foregoing pleading to all counsel of record via U.S. Mail, postage paid.

This, the 13th day of January, 2005.

Melissa Rider.